**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHARIRA RAINERI, | CIVIL ACTION NO. 11-4235 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| NORTH AMERICAN VAN LINES, INC., | |
| Defendant. | |

COOPER, District Judge

The plaintiff, Sharira Raineri, originally brought this action in the Superior Court of New Jersey, Monmouth County. (Dkt. entry no. 1, Rmv. Not., Ex. A, Compl.)  The defendants properly removed the action to this Court.  (Rmv. Not.)[1]

Raineri thereafter filed the Amended Complaint, raising two counts against NAVL that generally relate to services that NAVL provided to Raineri.  (Dkt. entry no. 15, Am. Compl.)  Raineri brings the first count of the Amended Complaint ("First Count") under New Jersey law, alleging that NAVL caused damage to her Freehold, New Jersey property and, further, caused Raineri to delay the sale of and "make financial concessions" to the purchasers of that property.  (See id. at ¶ 19.)  She brings the

---

[1] Raineri originally brought the action against both Apollo Moving & Storage ("Apollo") and North American Van Lines, Inc. ("NAVL").  The action was terminated insofar as it was brought against Apollo on December 1, 2011.  (See dkt. entry no. 14, 12-1-11 Consent Order.)

second count of the Amended Complaint ("Second Count") under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, et seq. ("the Carmack Amendment"), alleging that NAVL lost and damaged several household goods when moving Raineri's belongings from her Freehold, New Jersey and Forked River, New Jersey properties to her new residence in California. (See id. at ¶¶ 4, 13.)

NAVL now moves for summary judgment in its favor and against Raineri on all claims asserted against it, arguing that: (1) the First Count is preempted by the Carmack Amendment; and (2) Raineri is precluded from raising the Second Count because she has failed to satisfy conditions precedent to recovery, pursuant to either her contract with NAVL or the federal regulations under the Carmack Amendment. (See dkt. entry no. 16, Mot.; see also dkt. entry no. 16-5, NAVL Br.)[2]  Raineri opposes the Motion, arguing that: (1) the First Count is not subject to preemption; and (2) she may seek relief in the Second Count because her e-mails satisfied the conditions cited by NAVL. (See generally dkt. entry no. 17, Raineri Opp'n Br.)

---

[2] NAVL styled the Motion as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The parties have, however, asked the Court to consider matters beyond the pleadings and treat the Motion as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). (See 12-1-11 Consent Order at ¶ 2(b).)  See also Fed.R.Civ.P. 12(d).

The Court will resolve the Motion without oral argument
pursuant to Local Civil Rule 78.1(b).  We will, for the reasons
that follow, grant the Motion.

**I.   BACKGROUND**[3]

    **A.   NAVL Failed to Timely Pack and Load Raineri's
         Belongings in New Jersey**

Raineri contracted with NAVL and Apollo to move her
belongings from her two New Jersey properties to San Clemente,
California. (See dkt. entry no. 16-3, Marlowe Aff., Ex. D, Order
for Service; see also id., Ex. F, Cost Estimate.)  The Order for
Service provided that NAVL's agents ("the movers") would pack
Raineri's belongings on June 21 and 22, 2010, load them into
moving trucks on June 23, 2010, and deliver them in California
in early July.  (See Cost Estimate at 1-4.)  The movers began
loading Raineri's belongings on June 23, 2010, but did not
complete loading until June 27, 2010.  (See dkt. entry no. 16-4,

---

[3] Raineri agrees with each of NAVL's statements of material
fact. (Compare dkt. entry no. 16-1, NAVL's Statement of Material
Facts ("NAVL SOF"), with dkt. entry no. 17, Raineri Resp. to
NAVL SOF.)  NAVL did not respond to Raineri's supplemental
statement of material facts and is thus deemed to agree with
each of those statements.  (See dkt. entry no. 17, Raineri Supp.
SOF.)  See also L.Civ.R. 56.1(a) ("any material fact not
disputed shall be deemed undisputed for purposes of the summary
judgment motion"); Smith v. Addy, 343 Fed.Appx. 806, 808 (3d
Cir. 2009).  We thus, after ensuring that the parties'
respective statements of fact accurately summarize the evidence
of record, provide citation to those statements.

Daler Aff., Ex. O, 6-28-10 E-mail from Raineri to Pease; <u>see also</u> Daler Aff., Ex. S, 6-30-10 E-mail from Raineri to Pease.)

Raineri now seeks both direct and consequential damages as a result of the movers' actions.  Some of those damages relate to alleged losses of and damage to her belongings.  (<u>See</u> Am. Compl. at ¶¶ 7, 10, 20-34.)  Others relate to financial concessions that Raineri made as a result of the movers' conduct.  (<u>See</u> <u>id.</u> at ¶¶ 4-5, 17-19.)  Those concessions included $200 given to a cleaning service to remove "half-eaten sandwiches . . . water bottles, and used tape rolls . . . left all over the house" by the movers, and $6,000 given to the purchasers of Raineri's Freehold, New Jersey property as a result of the damages that the movers allegedly caused to and the delay of the sale of that property.  (<u>See</u> 6-30-10 E-mail from Raineri to Pease.)

Raineri signed a bill of lading after the movers loaded a portion of her belongings on June 24, 2010.  (NAVL SOF at ¶¶ 8-9; Raineri Resp. to NAVL SOF at ¶¶ 8-9; <u>see also</u> Marlowe Aff., Ex. H, Bill of Lading.)[4]  The Bill of Lading, <u>inter alia</u>, sets forth the procedures for filing claims for loss and damage.

---

[4] A bill of lading is "a transportation contract between a shipper . . . and a carrier."  <u>Paper Magic Grp., Inc. v. J.B. Hunt Transp. Inc.</u>, 318 F.3d 458, 461 (3d Cir. 2003) (citation omitted).

It states:

> As a condition precedent to recovery, a claim for any
> loss or damage, injury or delay must be filed in
> writing with carrier within nine (9) months after
> delivery to consignee as shown on face hereof, or in
> case of failure to make delivery, then within nine (9)
> months after a reasonable time for delivery has
> elapsed; and suit must be instituted against carrier
> within two (2) years and one (1) day from the date
> when notice in writing is given by carrier to the
> claimant that carrier has disallowed the claim or any
> parts of parts thereof specified in the notice.  <u>Where
> a claim is not filed or suit is not instituted thereon
> in accordance with the foregoing provisions, carrier
> shall not be liable and such claim will not be paid</u>.

(Bill of Lading at Section 6 (emphasis added).)

The Bill of Lading incorporates by reference the terms of

NAVL's Professional Relocation Tariff ("Tariff").  (NAVL SOF at

¶ 11; Raineri Resp. to NAVL SOF at ¶ 11.)  The Tariff contains

substantially the same language as that found in Section 6 of

the Bill of Lading, quoted above.  (Marlowe Aff., Ex. C, Tariff

at Item 104, Section 6.)[5]  The Tariff also provides, in relevant

part:

> 1. **<u>Notice of Claims Required</u>** — A claim for loss,
>    damage, injury, or delay shall not be
>    voluntarily paid by [NAVL] unless filed
>    electronically via [NAVL]'s website, or in
>    writing as provided in paragraph 2 below,
>    within the specified time limits applicable
>    thereto and as otherwise may be required by

---

[5] The relevant portions of the Tariff differ from Section 6
of the Bill of Lading only insofar as it refers to "the carrier"
as "North American", i.e., NAVL.  (<u>See</u> Tariff at Item 104,
Section 6, Item 302, ¶ 11.)

5

law, by the terms of the bill of lading and/or
other contract of carriage, and by all tariff
provisions applicable thereto.

2. **Minimum Filing Requirements** — A communication
[filed] electronically via [NAVL]'s website, or
in writing from a claimant filed with [NAVL]
within the time limits specified in the bill of
lading or contract of carriage or
transportation, and
   (a) containing facts sufficient to identify the
       shipment(s) of property involved;
   (b) asserting liability for alleged loss,
       damage, injury; and
   (c) making claim for the payment of a specified
       or determinable amount of money,
   shall be considered as sufficient compliance
   with the provisions for filing claims embraced
   in the bill of lading or other contract of
   carriage.

(Id. at Item 302, ¶¶ 1-2 (emphasized headings in original).)

### B. The Movers Failed to Timely Deliver Raineri's Belongings to Raineri's Residence in California

Raineri flew to California on June 26, 2010.  (See 6-30-10
E-mail from Raineri to Pease.)  She thereafter e-mailed Vicki
Pease, an NAVL customer service representative, informing Pease
of the earlier service issues and urging Pease to ensure that
her belongings timely arrived in California by July 3, 2010.
(See 6-28-10 E-mail from Raineri to Pease.)  Pease responded to
Raineri's e-mail and explained that Raineri, if seeking damages
related to delays, would have to formally submit an NAVL claim
form and receipts to support her claims.  (See Daler Aff., Ex.
R, 6-29-10 E-mail from Pease to Raineri.)

6

Raineri sent Pease another e-mail on June 30, 2010, complaining again of the movers' earlier service failures, and alleging that she was informed she would not timely receive her belongings in California. (See 6-30-10 E-mail from Raineri to Pease.) Raineri asked Pease to address the situation and ensure timely delivery. (See id.) Raineri now acknowledges that this e-mail did not contain the NAVL claim form or the receipts that Pease earlier requested. (NAVL SOF at ¶ 20; Raineri Resp. to NAVL SOF at ¶ 20.)

The movers did not complete delivery of Raineri's belongings until July 18, 2010. (See Bill of Lading.) Raineri acknowledged final delivery by again signing the Bill of Lading. (See id.; see also NAVL SOF at ¶ 15; Raineri Resp. to NAVL SOF at ¶ 15.)

## C.   Raineri Contacted NAVL and Attempted to Seek Reimbursement for Items Damaged During the Move

Raineri, on July 22, 2010, sent an e-mail to Ruth Daler, a customer service representative for NAVL, informing Daler that she wished to suspend payment for the NAVL's services because the shipments to California were late, incomplete, and, to the extent that they were delivered, damaged. (Daler Aff., Ex. T, 7—22-10 E-mail from Raineri to Daler.) Raineri, inter alia, explained that many of her belongings were missing; that she, as a result of the missing belongings, had purchased replacement

7

"essential 'need to live' items"; and that the movers "smashed a medicine cabinet". (Id.) Raineri also requested that Daler provide "instructions for . . . getting reimbursed for essentials, and for filing a claim for lost and damaged items." (Id.)

Daler responded by e-mail on July 26, 2010, providing instructions on submitting claims arising from late delivery and advising Raineri that another NAVL representative would provide instructions on submitting claims for loss and damage. (Daler Aff., Ex. U, 7-26-10 E-mail from Daler to Raineri.) Sandy Marlowe, NAVL's Lead Claim Services Representative, thereafter sent Raineri an e-mail with instructions for filing claims for loss and damage. (Marlowe Aff. at ¶ 25; see also id., Ex. I, 7-26-10 E-mail from Marlowe to Raineri.)

Nearly six weeks lapsed before Raineri next contacted NAVL when, on September 9, 2010, she sent Daler another e-mail. (Daler Aff., Ex. V, 9-9-10 E-mail from Raineri to Daler.) Raineri stated in that e-mail that her "king size bed headboard was cracked in half, the washer was broken (and had to be trashed) and [her] grill was in three pieces." (Id.) She also stated that some of her belongings, following the move, had "an odor . . . that [she] can't get rid of" and that she had not yet received most of her kitchen items, her ladder, and most of her tools. (Id.)

Raineri, in that e-mail, also declared that she found it too cumbersome to comply with the formal claims process because it "would be [her] full time job to itemize and document the inordinately long list of damaged and missing items". (Id.) Raineri thus proposed, as an alternative to NAVL's formal claims process, to reduce her payment to NAVL for its services and "consider the matter resolved." (Id.) Daler replied that she could not agree to reduce NAVL's fees. (Daler Aff., Ex. W, 9-9-10 E-mail from Daler to Raineri.) She instead stated -- as she and other NAVL representatives had stated before -- that Raineri should file a formal claim for any damages sustained as a result of the movers' actions. (Id.) Daler again provided Raineri instructions, directing her to claims forms on NAVL's website and informing her that she had nine months from the date of delivery to file a claim. (Id.)

Raineri, despite NAVL's repeated instruction regarding the claims process, failed to complete that process. She instead sent several additional e-mails to Daler and Marlowe, further detailing her frustrations and her reluctance to follow formal claims procedures. (See, e.g., Daler Aff., Ex. Y, 9-12-10 E-Mail from Raineri to Daler ("There is ample evidence to suggest that although I may waste my time and fill out all the arduous paperwork necessary to file claims for all that has been lost and damaged, that your company will not reimburse me.").)

9

Raineri also further detailed her alleged losses and damages. (See Daler Aff., Ex. Z, Second 9-12-10 E-mail from Raineri to Daler.)  She specifically alleged that the movers stole her daughter's iPod and that they "smashed" her grill onto her car. (Id.)  It appears that Raineri attached photographs to these e-mails as proof of her alleged damages, though it is unclear (1) what Raineri photographed, or (2) when the photographs were taken.  (See Daler Aff. at ¶ 24.)[6]

NAVL continued to attempt to assist Raineri.  Marlowe explained in a reply e-mail that NAVL, after receiving "an actual claim form", would assign a claims adjuster who would address Raineri's complaints.  (Marlowe Aff., Ex. M, 9-13-10 E-mail from Marlowe to Raineri.)  Daler similarly responded, explaining that Raineri's photographs, though "helpful", did not "constitute a filed claim" and therefore did not waive Raineri's duty to follow NAVL's formal claims process.  (Daler Aff., Ex. AA, 9-13-10 E-mail from Daler to Raineri; see also id. at ¶ 26.)

The parties now agree that Raineri did not complete the NAVL claim process, and similarly failed to submit receipts for the items for which she sought reimbursement, as requested on several occasions by NAVL's customer service representatives. (NAVL SOF at ¶¶ 35-37; Raineri Resp. to NAVL SOF at ¶¶ 35-37.)

---

[6] Neither NAVL nor Raineri submitted these photographs for the Court's consideration.

## II.   DISCUSSION

NAVL contends that the First Count is preempted by the Carmack Amendment.  (See NAVL Br. at 11-13.)  NAVL also contends that it is entitled to summary judgment in its favor and against Raineri on the Second Count because: (1) Raineri, by failing to adhere to NAVL's formal claims process, allegedly failed to satisfy either the provisions of the parties' contract or the regulations enacted pursuant to the Carmack Amendment pertaining to notice of claims; and (2) Raineri's e-mails, even if accepted as notice of a claim, were allegedly deficient as a matter of law.  (See id. at 13-27.)

Raineri opposes the Motion.  (See generally Raineri Opp'n Br.)  She argues that the First Count is not preempted by the Carmack Amendment because she is not, in that count, claiming that NAVL lost or damaged goods in transit.  (Id. at 32-33.)  She also argues, with respect to the Second Count, that she satisfied all conditions set by her contract with NAVL and the pertinent regulations.  (Id. at 14-31.)

### A.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  The movant has the initial burden of proving the absence of a genuinely disputed material fact

relative to the claims in question.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party."  Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The burden on the movant may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-movant's case.  Celotex, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Williams v. Bor. of W. Chester, Pa., 891 F.2d 458, 460-61 (3d Cir. 1989).  A non-movant asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute[.]"  Fed.R.Civ.P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in that party's favor.  Scott v. Harris, 550 U.S. 372, 380 (2007); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).  If the non-movant fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to judgment as a matter of law.  See Celotex, 477 U.S. at 322.

**B.   The First Count**

The Carmack Amendment governs interstate carriers' liability for "damages and losses to goods caused by the carrier in interstate shipment."  S & H Hardware & Supply Co. v. Yellow Transp., Inc., 432 F.3d 550, 551 (3d Cir. 2005).  Congress, in enacting the Carmack Amendment, intended to "take possession of the subject [of interstate carriers' liability], and supersede all state regulation with reference to it" in order to establish "uniformity . . . of liability".  Adams Express Co. v. Croninger, 226 U.S. 491, 505-06 (1913); NII Brokerage, L.L.C., v. Roadway Exp., Inc., No. 07-5125, 2008 WL 2810160, at *2 (D.N.J. July 18, 2008).  The Carmack Amendment thus covers "all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation" and preempts all state law claims for the same.  See Ga., Fla. & Atl. Ry. Co. v.

13

Blish Milling Co., 241 U.S. 190, 196 (1916); see also Lewis v. Atlas Van Lines, Inc., 542 F.3d 403, 407-08 (3d Cir. 2008) (stating that state law claims against carrier, based on carrier's interstate transportation services, were preempted by the Carmack Amendment); La. Transp. v. Cowan Sys., LLC, No. 11-3435, 2012 WL 1664120, at *3 (D.N.J. May 10, 2012) ("[C]ourts in this Circuit have found that the Carmack Amendment broadly preempts claims other than those that relate to lost or damaged goods.")

The Court has closely considered both the claims for relief set forth in the First Count and the full scope of the Carmack Amendment.  We now conclude that the First Count is preempted by the Carmack Amendment.

Raineri acknowledges the full scope of the Carmack Amendment, as set forth in Blish Milling and Lewis.  (See Raineri Opp'n Br. at 32 (citing Lewis, 542 F.3d at 407-08 (stating that Carmack Amendment covers "all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation" and quoting Blish Milling, 241 U.S. at 196).)  She also acknowledges that the Carmack Amendment "preempts state law under almost all circumstances." (See Raineri Opp'n Br. at 32 (citing Orlick v. J.D. Carton & Son, Inc., 144 F.Supp.2d 337, 345 (D.N.J. 2001).)  She nonetheless argues that the First Count, which appears to sound in either

14

negligence or breach of contract, is not preempted by the Carmack Amendment because it does not concern damage to or loss of her household goods. (See Raineri Opp'n Br. at 32-33.)

Raineri's argument lacks merit. The First Count concerns (1) damages that NAVL's agents allegedly caused to her Freehold, New Jersey residence and (2) costs incurred as a result of NAVL's agents failure to properly discharge their duties. (See 2d Am. Compl. at ¶¶ 16-19.) Because the First Count relates to losses resulting from NAVL's failure to properly discharge its duties under some part -- any part -- of the parties' contract, the First Count is preempted by the Carmack Amendment. See Blish Milling, 241 U.S. at 196; Lewis, 542 F.3d at 407-08.[7]

---

[7] The Court notes that the First Count, insofar as it concerns NAVL's failure to properly discharge duties concerning packaging and loading Raineri's belongings into a trailer, fall squarely within the scope of the Carmack Amendment. The Carmack Amendment provides that a household goods motor carrier, "in the ordinary course of its business of providing transportation of household goods", provides services such as "[p]rotective packing and unpacking of individual items at personal residences" and "[l]oading . . . at personal residences." 49 U.S.C. § 13102(12)(A)(iii)-(iv). Because such services fall within the definition of duties held by household goods motor carriers, state law claims for failure to properly discharge such duties are preempted by the Carmack Amendment.

C.    **The Second Count**

1.    **Form of Notice**

Federal regulations promulgated pursuant to the Carmack Amendment govern, <u>inter alia</u>, "the processing of claims for loss, damage, injury, or delay to property transported or accepted for transportation, in interstate . . . commerce, by" motor carriers.  49 C.F.R. § 370.1.  These regulations provide that a claim must take the form of either a written communication or, when in a form agreed to by both the carrier and shipper, an electronic communication.  49 C.F.R. § 370.3(b).[8]

NAVL argues that Raineri's several e-mails to NAVL customer service representatives fail to conform to the standard set by the federal regulations, insofar as those e-mails are neither written (i.e., non-electronic) communications nor electronic communications in a form agreed-upon by both parties.  (<u>See</u> NAVL Br. at 13-22.)  It argues that Raineri should have but failed to conform to NAVL's formal claims process, as indicated in the several responsive e-mails that Raineri received from Daler, Marlowe, and Pease.  (<u>See</u> <u>id.</u> at 18-20.)  NAVL thus argues that

---

[8] The Tariff provisions quoted in Section I.A of this Memorandum Opinion, concerning the claims procedure required before recovery of damages, are virtually identical to the regulations that govern liability of interstate carriers.  (<u>See</u> Tariff.)  <u>Cf.</u> 49 C.F.R. § 370.3(b).  The Tariff's provision on claims processing differs only insofar as it provides that a claim must be filed in writing or "electronically via North American's website".  (Tariff at Item 302, ¶ 1.)

Raineri cannot, as a matter of law, proceed with this action.
(See id. at 13-22.)

Raineri, in opposing the Motion, asserts that her e-mails,
taken together, constitute formal written claims. (See, e.g.,
Raineri Resp. to NAVL SOF at ¶ 21.)  She argues that she was not
required to use NAVL's formal electronic claims process because
she "substantially complied" with the requirements for
presenting a written claim for damages set forth in the
regulations related to the Carmack Amendment, Order for Service,
and Tariff. (Id. at 30.)

The Court acknowledges that the written claim requirement
exists "to insure that carriers may promptly investigate claims,
and not to permit the carrier to escape liability." Lewis, 542
F.3d at 411 (quoting S & H Hardware & Supply, 432 F.3d at 554).
Courts in this circuit construe the written claim requirement
liberally, and require substantial performance rather than
strict compliance with that requirement.  See S & H Hardware &
Supply, 432 F.3d at 554.  "The crux of the notice is whether it
apprises the carrier of the basis of the claim and that
reimbursement will be sought."  Id.

The Court has scrutinized the series of e-mails that passed
between Raineri and NAVL's customer service representatives,
i.e., Pease, Daler, Marlowe.  Upon completion of that review,
the Court is constrained to find that Raineri's e-mails do not

17

satisfy either the regulations promulgated pursuant to the

Carmack Amendment or the contract between the parties.[9]

> ### 2. Raineri's E-mails Do Not Meet the Formal Claim Requirements Because They Constitute Neither "Written Communications" Nor "Electronic Communications . . . Agreed to By the Carrier and Shipper . . . Involved"

The regulation that controls this aspect of the Motion, 49

C.F.R. § 370.3, defines minimum filing requirements for claims.

It states that a claim must take the form of a "written or

electronic communication (when agreed to by the carrier and

shipper . . . involved) from a claimant."  The Court interprets

this passage as indicating that a claimant may file a formal

claim either by submitting written communications (i.e.,

communications in a non-electronic form) or, when agreed to by

the carrier and the shipper, by submitting electronic

communications.

The Court reaches this conclusion in consideration of

Lewis.  There, the United States Court of Appeals for the Third

Circuit ("Third Circuit") explained that "basic tenets of

statutory construction apply to construction of regulations".

---

[9] "The bill of lading operates as both the receipt and the basic transportation contract between the shipper and the carrier, and its terms and conditions are binding."  E.F. Operating Corp. v. Am. Bldgs., 993 F.2d 1046, 1050 (3d Cir. 1993); see also Moffitt v. Bekins Van Lines Co., 6 F.3d 305, 306 (5th Cir. 1993) (recognizing an order for service and bill of lading as "governing the move").

Lewis, 542 F.3d at 409 (citation and quotation marks omitted).

Pursuant to such tenets, "terms connected by a disjunctive

[must] be given separate meanings unless the context dictates

otherwise". Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979);

United States v. Parcel of Real Prop. Known as 6109 Grubb Rd.,

886 F.2d 618, 626 (3d Cir. 1989) ("Grubb Rd."). The portion of

§ 370.3 quoted above -- the section mirrored in the Bill of

Lading and Tariff -- states that claims for damages must be

filed in either a written communication or an electronic

communication in a format agreed upon by the parties. See 49

C.F.R. § 370.3(b) (providing that a claim for damages must be

either "[a] written or electronic communication (when agreed to

by the carrier and the shipper or receiver involved) from a

claimant.") Because the terms "written communication" and

"electronic communication" are separated by the word "or", they

must therefore be given separate meanings. See Reiter, 442 U.S.

330 at 339; Grubb Rd., 886 F.2d at 626.

The Court, in the absence of explicit legislative

definitions, interprets the terms "written" and "electronic"

according to their ordinary meanings. See Perrin v. United

States, 444 U.S. 37, 42 (1979) ("[a] fundamental canon of

statutory construction is that, unless otherwise defined, words

will be interpreted as taking their ordinary, contemporary,

common meaning"); see also Lewis, 542 F.3d at 409. In

19

determining the ordinary meaning of words, the Court relies on

"general dictionaries".  See Pa. Dep't of Pub. Welfare v. U.S.

Dep't of Health & Human Servs., 647 F.3d 506, 511 (3d Cir.

2011); see also Lewis, 542 F.3d at 409 (using general

dictionaries to determine ordinary meaning of the words

"specified" and "determinable").  The word "electronic" is

defined as, inter alia, "implemented on or by means of a

computer: involving a computer".  Webster's Third New Int'l

Dictionary, 733 (Philip Babcock Gove, ed. 1961) (1986).  The

word "e-mail" is defined as, inter alia, "a means or system for

transmitting messages electronically (as between computers on a

network)".  Id. at 738 (emphasis added).

    The Court thus concludes that, for purposes of applying the

federal regulations related to the Carmack Amendment, an e-mail

is not a "written communication".  It is, instead, an

"electronic communication".[10]  The next question, then, is

---

[10] Raineri, in her opposition to the Motion, argues that her
e-mails are "written communications" under 49 C.F.R. § 370.3(b).
The Court is familiar with a single case where a federal
district court accepted an e-mail as a "written claim".  See
Valerus Compression Servs. L.P. v. Lone Star Transp., LLC, No.
10-C-517, 2011 WL 3566865 (E.D. Wisc. Aug. 15, 2011).  The court
in that case, however, did not engage in the analysis that this
Court has undertaken, above.  This Court therefore finds Valerus
unpersuasive.
    We note that Valerus found support in Hopper Paper Co. v.
Balt. & Ohio R.R. Co., 178 F.2d 179 (7th Cir. 1949), where the
United States Court of Appeals for the Seventh Circuit concluded
that a carrier's actual knowledge of a claim relieved a shipper

whether the parties agreed to accept electronic communications in the form of e-mails. See 49 C.F.R. § 370.3(b) (noting that a claim may take the form of an "electronic communication (when agreed to by the carrier and shipper . . . involved)").

The evidence of record demonstrates that the parties did not anticipate that Raineri, if filing a claim, could do so by sending one or more e-mails that simply alleged damage or otherwise described her claim. The Tariff, part of the contract between the parties, provided that Raineri was, if filing a claim, required to complete claim forms available on NAVL's website. (Tariff at Item 302, ¶ 1.) Those forms, once completed, could be submitted to NAVL through the website, by mail, by e-mail, or by facsimile. (See id.; see also Daler Aff. at ¶ 7; 7-26-10 E-mail from Marlowe to Raineri.)

Raineri admits that she failed to complete the formal NAVL claims process, despite repeated opportunity and instruction from NAVL customer service representatives. (See Raineri Resp. to NAVL SOF at ¶¶ 35, 37.) Indeed, as noted above, Raineri expressed the belief that completing the formal claims process would be "arduous", become her "full time job", and would "waste

---

of its burden to file a proper claim. The Third Circuit has explicitly rejected Hopper Paper, calling it a "maverick decision". See Perini-North River Assocs. v. Chesapeake & O. Ry. Co., 562 F.2d 269, 273-74 (3d Cir. 1977). The Third Circuit's rejection of Hopper Paper further supports this Court's decision not to rely on Valerus.

[her] time". (9-9-10 E-Mail from Raineri to Daler; 9-12-10
E-mail from Raineri to Daler). The Court is thus constrained to
conclude, pursuant to both the regulations promulgated under the
Carmack Amendment and the contract between the parties, that
Raineri failed to submit a proper notice of claim and,
accordingly, failed to meet a condition precedent to the
recovery she now seeks.

> **3. Raineri's E-mails, Even When Considered in Light
> of a "Substantial Compliance" Standard, Failed to
> Provide NAVL an Adequate Opportunity to
> Investigate Raineri's Claim**

The purpose of the written claim requirement, as noted
above, is to afford the carrier an opportunity to investigate
claims. See Lewis, 542 F.3d at 411; S & H Hardware & Supply,
432 F.3d at 554. The Court has thus considered whether
Raineri's e-mails, though not technically compliant with either
the regulations promulgated under the Carmack Amendment or the
parties' contract, afforded NAVL a meaningful opportunity to
investigate Raineri's allegations of loss and damage.

Raineri, through her several e-mails with NAVL customer
service representatives, raises allegations about damaged, lost
or stolen items including "a medicine cabinet", a "king size bed
headboard", "the washer", a "grill", her daughter's iPod, and
"most of [her] kitchen items . . . [her] ladder and most of
[her] tools." (7-26-10 E-mail from Raineri to Daler; 9-9-10

22

E-mail from Raineri to Daler; Second 9-12-10 E-Mail from Raineri to Daler.)  She alleges that "many of [her] clothes and all of [her] mattresses", following transport, had an odor that could not be eliminated.  (9-9-10 E-mail from Raineri to Daler.)  She also offers vague and conclusory comments about the NAVL's alleged service failures.  (See, e.g., 9-12-10 E-Mail from Raineri to Daler ("many of my items are missing and broken").)

NAVL, without further information, could not meaningfully investigate Raineri's claims.  NAVL was handcuffed by the information (or lack of information) provided by Raineri.  Her failure to adequately describe the items allegedly lost, damaged, or stolen by the movers deprived NAVL of the opportunity to search its warehouses, interview its employees and agents, or otherwise investigate her claims.  Put simply, Raineri's failure to provide more detailed information -- e.g., the kind of information that one might expect to enter into a traditional claims form -- deprived NAVL of "[t]he crux of the notice", an appraisal "of the basis of the claim."[11]

---

[11] The Court notes, for example, that Raineri alleged that the movers damaged "a medicine cabinet" and a "grill".  These allegations, however, fail to provide NAVL adequate notice of the basis of her claim, as she fails to distinguish the allegedly damaged items from other, similar items -- i.e., from other medicine cabinets or grills -- that NAVL may have transported.

## III. CONCLUSION

The Court recognizes that the entry of judgment in NAVL's favor and against Raineri appears, at first blush, to be a harsh result.  Raineri alleges that she sustained over $24,000 in loss and damage as a result of NAVL's actions.  The Court is sympathetic to her situation.

The Court must, however, base its resolution of the Motion in law rather than emotion.  To that end, we finds persuasive the reasoning of the United States District Court for the Southern District of New York.  That court held that "ideally, whoever is responsible for the damage should pay, yet he who seeks compensation must . . . comply with the agreed upon procedure to recovery."  R.T.A. Corp. v. Consol. Rail Corp., 594 F.Supp. 205, 211 (S.D.N.Y. 1984).  That court further explained: "To the extent that carriers may escape liability, such 'windfalls' may be properly traced, not to the existence of the regulations, but to shippers' unexcused failure to comply with a reasonable condition contained in bills of lading."  Id. (citation omitted).

Raineri agreed to abide by NAVL's formal claims process by entering into the contract comprised in pertinent part by the Bill of Lading and the Tariff.  Thereafter, however, she failed to abide by that process, despite the repeated reminders and explanations of the claims process provided by NAVL's customer

24

service representatives.  (See 6-29-10 E-mail from Pease to
Raineri; 7-26-10 E-mail from Daler to Raineri; 9-9-12 E-mail
from Daler to Raineri; 9-13-10 E-mail from Daler to Raineri;
Marlowe Aff., Ex. K, 9-13-10 E-mail from Marlowe to Raineri;
Marlowe Aff., Ex. M, 9-13-10 E-mail from Marlowe to Raineri; see
also Daler Aff. at ¶ 27 (explaining that Raineri was "repeatedly
informed that her e-mails did not constitute a written claim for
damages").)  Raineri ignored that process, disregarded NAVL's
instructions, and, instead, relied on a series of e-mails, fully
aware that NAVL would not accept them as notice of her claim.
(See Daler Aff., Ex. Y, 9-12-10 E-mail from Raineri to Daler
(Raineri explaining that it would be a waste of her time to
"fill out all the arduous paperwork necessary to file claims for
all that has been lost and damaged").)

    The claims process, as set forth in the NAVL customer
service representatives' replies to Raineri's e-mails, does not
appear to be particularly unreasonable or arduous.  The entry of
summary judgment in favor of NAVL and against Raineri with
respect to the Second Count of the Amended Complaint is
therefore not unreasonably severe.  See Calpro Co. v. Consol.
Eng'g Co. of Ga., Inc., 502 F.Supp. 707, 715 (N.D. Ga. 1980)
(finding that, despite evidence that the defendant carrier
knowingly damaged the plaintiff's oven while in transit, "the
law require[d]" granting judgment in the carrier's favor and

against the shipper where the shipper failed to properly file a written claim).

The Court will thus grant the Motion and enter judgment in NAVL's favor and against Raineri on both the First Count and the Second Count.  For good cause appearing, the Court will enter an appropriate Order and Judgment.


                              s/ Mary L. Cooper
                         **MARY L. COOPER**
                         United States District Judge


Date:      August 28, 2012